IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OMEGA US INSURANCE, INC.,

   *Plaintiff*,

   v.

PENNSYLVANIA NATIONAL
MUTUAL CASUALTY
INSURANCE COMPANY, *et al.*,

   *Defendants*.

Civil Action No. ELH-11-2297

**MEMORANDUM**

This is a declaratory judgment action regarding insurance coverage. Omega US Insurance, Inc. ("Omega"), plaintiff, filed suit on August 17, 2011, against its insured, RN'G Construction, Inc. ("RN'G"), as well as Pennsylvania National Mutual Casualty Insurance Company ("Penn National"); Timothy W. Whalen and Evonne J. Whalen; Joyce M. Lookabaugh; and Con-Way Truckload ("Con-Way"). Omega seeks a declaration pronouncing, *inter alia*, that Omega is not required to defend and indemnify RN'G against claims arising out of an accident that occurred on or about July 14, 2010, involving a truck owned by RN'G. *See* ECF 1. On October 19, 2011, Omega filed an Amended Complaint (ECF 9), naming two additional defendants: the Maryland State Highway Administration ("SHA" or "MSHA") and Long Fence Company Inc. ("Long Fence"). Omega asserted subject matter jurisdiction on the basis of diversity of citizenship. *See* Amended Complaint ¶ 12; *see also* 28 U.S.C. § 1332.

At this juncture, five of the eight defendants (Penn National, RN'G, Lookabaugh, and the Whalens) have appeared and responded to the Amended Complaint. The remaining three defendants (Con-Way, Long Fence, and the SHA) have yet to appear. On December 22, 2011, I

issued an Order (ECF 20) directing the parties that have appeared to file a joint status report as to

three matters:

1. Whether the Court possesses subject matter jurisdiction, in light of the fact
   that the SHA, which is an agency of the State of Maryland, is a defendant.

2. Whether Con-Way, Long Fence, and the SHA have been served with
   summonses and, if so, when they were served.

3. If any defendant has not yet been served, whether good cause exists to extend
   the time for service pursuant to Rule 4(m) and, if so, the appropriate length for
   such extension.

On January 11, 2012, Omega filed a notice of voluntary dismissal as to the SHA (ECF

21), which I marginally approved (ECF 22). Later the same day, the parties filed a Status Report

(ECF 24), as requested. This Memorandum addresses the matters discussed in the Status Report.

## A. Subject Matter Jurisdiction

As I explained in my Order, the addition of the SHA, which is a "governmental agency or

division of the Maryland Department of Transportation, State of Maryland," Amended

Complaint ¶ 6, raised doubt as to the existence of diversity jurisdiction. Diversity jurisdiction is

implemented by 28 U.S.C. § 1332(a), which grants federal district courts "original jurisdiction of

all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive

of interest and costs, and is between . . . citizens of different States."

Ordinarily, a state agency is not considered a "citizen" of a state, so as to confer diversity

jurisdiction. The Fourth Circuit explained the relevant principles in *South Carolina Department*

*of Disabilities and Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303 (4th Cir. 2008):

> It is well established that for purposes of diversity jurisdiction, a State is
> not a "citizen." *See Moor v. County of Alameda*, 411 U.S. 693, 717 (1973).
> Moreover, a public entity created under state law, which is "the arm or alter ego
> of the State," is likewise not a citizen for purposes of diversity jurisdiction. *Id.*
> (internal quotation marks omitted) (emphasis omitted); *see also Maryland*

Case 1:11-cv-02297-ELH   Document 25   Filed 01/13/12   Page 3 of 10


*Stadium Auth. v. Ellerbe Becket Inc*., 407 F.3d 255, 260 (4th Cir. 2005).  But an entity created by the State which functions independently of the State with authority to sue and be sued, such as an independent authority or a political subdivision of the State, can be a "citizen" for purposes of diversity jurisdiction. *Moor*, 411 U.S. at 717-18; *Maryland Stadium Auth.*, 407 F.3d at 260.

The line separating a State-created entity functioning independently of the State from a State-created entity functioning as an arm of the State or its alter ego is determined by the particular legal and factual circumstances of the entity itself. To define that line, we have articulated a nonexclusive list of four factors to be considered: (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with "the State [is] sufficiently close to make the entity an arm of the State." *See Maryland Stadium Auth.*, 407 F.3d at 261-62 (alteration in original) (drawing factors from *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391 (1979) and *Ram Ditta v. Maryland Nat'l Capital Park & Planning Comm'n*, 822 F.2d 456 (4th Cir. 1987), and quoting *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001)).

As I mentioned in my Order, I am presently unaware of a case that has applied the foregoing analysis to determine whether the SHA is an "alter ego" of the State of Maryland for purposes of diversity.  However, Omega has filed a notice of voluntary dismissal as to the SHA, pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, which permits a plaintiff to "dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."[1]

---

[1]  Although the notice of voluntary dismissal (ECF 21) stated only that plaintiff "dismisses without prejudice the Maryland State Highway Administration as a party defendant," I presume that Omega also thereby dismissed Count III of its Amended Complaint, which seeks a declaratory judgment stating that the "MSHA is [n]ot an Insured on the Omega US Policy," and that Omega "has no obligation to provide coverage to MSHA for the July 14, 2010 Incident Claims."  Amended Complaint at 18; *see also id.* at 22 (third request for relief).

- 3 -

In the joint status report, Omega represents that it believed SHA was implicated in the dispute at bar because, at the time of the accident, RN'G was a subcontractor to Long Fence, which in turn was a contractor to the SHA, and Long Fence (via its insurer) had asserted a claim for defense and indemnification from Omega, arising out of RN'G's obligation to defend and indemnify Long Fence under the terms of the subcontract between RN'G and Long Fence. *See* Amended Complaint ¶¶ 34-48.  Therefore, Omega states that it "believed it was appropriate to join SHA" as a party and "seek discovery," Status Report at 4, as to the "particular legal and factual circumstances of the entity." *S.C. Dept. of Disabilities*, 535 F.3d at 303.  However, according to Omega, "given that the SHA is not an additional insured on the Omega US Policy, nor has it . . . sought coverage under the Omega US Policy, there is no compelling need to undertake the expense and time of that inquiry," and, "[g]iven the early stages of this case and the fact that SHA has not been served and no-cross claims have been asserted against it, no party should be unduly prejudiced, burdened or inconvenienced by this dismissal."  Status Report at 4.

RN'G, the Whalens, and Lookabaugh state that they "recognize[] [that] this Court approved, via marginal order, the withdrawal of the claim against the SHA." *Id.*  However, they indicate that they intend to file a motion raising "the propriety of that withdrawal and may ask the Court to reconsider its order or take other appropriate relief." *Id*.  In addition, they "may also challenge any assertion by the Plaintiff that SHA is not a required Party and therefore the Court has subject matter jurisdiction to this Action." *Id*.  Further, they note that, even if the Court does have subject matter jurisdiction, it may be appropriate for the Court to exercise its discretion to decline to exercise it or to stay this case, because "there are several other entities that have an interest in the outcome of the coverage issues that have not been named as parties, including

RN'G's umbrella carrier, Con-Way's insurer, Lookabaugh's insurer, and Long Fence's insurer," and that "RN'G has filed in State Court a declaratory judgment action against the Plaintiff, all of the Defendants named in this case, including the SHA, as well as the aforementioned interested parties." Defendants also note that the Whalens "will soon file a tort action against RN'G, Long Fence, SHA and other entities." *Id.*

In light of the concerns expressed by the parties, I make the following two observations.

First, I have made no determination, at this juncture, as to whether SHA is, in fact, an "alter ego" of the State, such that its status as a party would destroy diversity. *See S.C. Dept. of Disabilities*, 535 F.3d at 303. Nor have I determined, assuming that SHA is non-diverse, whether voluntary dismissal of plaintiffs' claims against SHA would cure the defect. Indeed, if SHA is non-diverse, and is also a "necessary" and "indispensable" party pursuant to Rule 19 of the Federal Rules of Civil Procedure, diversity jurisdiction would remain lacking. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246 (4th Cir. 2010); *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435 (4th Cir. 1999). And, as defendants suggest, there may be other reasons that this Court should decline to exercise jurisdiction, even if diversity is satisfied. These matters may appropriately be addressed in the context of the motions that defendants anticipate filing.

Second, a notice of voluntary dismissal under Rule 41(a)(1)(A)(i) is "self-executing, i.e., it is effective at the moment the notice is filed with the clerk and no judicial approval is required." *Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 546 (4th Cir. 1993). In the leading case of *American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963), the Fifth Circuit explained:

Rule 41(a)(1) is the shortest and surest route to abort a complaint when it is applicable.  So long as plaintiff has not been served with his adversary's answer or motion for summary judgment he need do no more than file a notice of dismissal with the Clerk.  That document itself closes the file.  There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play.  This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court.  There is not even a perfunctory order of court closing the file.  Its alpha and omega was the doing of the plaintiff alone.

Some confusion as to this point may be engendered by the practice, at least in this district, of marginally approving notices of voluntary dismissal.  This practice is ministerial, and is performed purely for the administrative convenience of the Court, so as to confirm that the Clerk may terminate a party, claim, or case.  As the Fourth Circuit observed in *Marex*, a notice of voluntary dismissal filed before the adversary has filed an answer or motion for summary judgment is effective even in the absence of the marginal approval of the Court.  Thus, there is no basis for the Court to "reconsider" the voluntary dismissal.  But, as indicated, in marginally approving the notice of voluntary dismissal, I have not expressed any view as to whether dismissal of the SHA is sufficient to cure a jurisdictional defect that may result from the SHA's prior status as a party.

## B.  Unserved Parties

In the Status Report, the parties confirm that Con-Way and Long Fence have not yet been served.  Rule 4(m) of the Federal Rules of Civil Procedure establishes a 120-day period for service of process.  *See also* Local Rule 103.8(a).  Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Long Fence was first named as a defendant in the Amended Complaint, which was filed on October 19, 2011.  Thus, the 120-day period as to Long Fence has not yet expired; it will expire as of February 16, 2012.

Con-Way was named as a defendant in the original Complaint, however, and more than 120 days has elapsed since the filing of the original Complaint on August 17, 2011.  With respect to Con-Way, Omega reports: "The process server has not effected Service on Con-Way due to internal errors only recently reported by the private process server and discovered by counsel." Status Report at 5.  It elaborates: "The Process Server only this week admitted that he had no record of Plaintiff requesting service despite counsel's letter sending service instructions on all defendants all of whom were served with the original complaint except for Con-Way."

Omega indicates it has requested that service occur no later than January 13, 2012, and seeks an order extending the time to effect service through January 31, 2012.  Notably, Omega provides no explanation as to why, since the inception of suit in August 2011, the process server's error apparently was neither discovered nor addressed prior to the issuance of the Court's Order on December 22, 2011.

As discussed, Rule 4(m) establishes a 120-day period in which to effectuate service. Rule 4(m) was enacted in 1993 as a successor to the former Rule 4(j), which had required that a case "shall be dismissed" if the defendant was not served within 120 days and the plaintiff "cannot show good cause why such service was not made within that period." *Hammad v. Tate Access Floors, Inc.*, 31 F. Supp. 2d 524, 526 (D. Md. 1999).  After Rule 4(m) was enacted, the Fourth Circuit decided *Mendez v. Elliott*, 45 F.3d 75 (4th Cir. 1995), in which it opined that the new Rule 4(m) represented a "renumber[ing]" of former Rule 4(j), "without a change in

substance," and stated: "Rule 4(m) requires that if the complaint is not served within 120 days

after it is filed, the complaint must be dismissed absent a showing of good cause."  *Id.* at 78.  In

so stating, however, the *Mendez* Court did not discuss the Advisory Committee Notes to Rule

4(m), which explicitly state that the rule "'authorizes the court to relieve a plaintiff of the

consequences of an application of this subdivision *even if there is no good cause shown*.'"

*Hammad*, 31 F. Supp. 2d at 527 (quoting Advisory Committee Notes; emphasis altered).

After *Mendez*, the Supreme Court decided *Henderson v. United States*, 517 U.S. 654

(1996).  In *dicta,* the Supreme Court stated that, under Rule 4(m), "courts have been accorded

discretion to enlarge the 120-day period 'even if there is no good cause shown.'"  *Id.* at 662

(quoting Advisory Committee Notes to Rule 4(m)); *see also id.* 517 U.S. at 658 n.5 ("Rule 4(m)

. . . permits a district court to enlarge the time for service 'even if there is no good cause

shown.'").[2]

Several decisions of this Court have observed that it is unclear, in this circuit, whether

Rule 4(m) vests a court with discretion to grant an extension of the 120-day deadline, in the

absence of good cause.  *See, e.g.*, *Lehner v. CVS Pharmacy*, Civ. No. RWT-08-1170, 2010 WL

610755, at *2 (D. Md. Feb. 17, 2010); *Knott v. Atlantic Bingo Supply, Inc.*, Civ. No. JFM-05-

1747, 2005 WL 3593743 (D. Md. Dec. 22, 2005); *Hoffman*, *supra*, 379 F. Supp. 2d at 786;

*Melton v. Tyco Valves & Controls, Inc.*, 211 F.R.D. 288 (D. Md. 2002); *Hammad*, 31 F. Supp. 2d

at 526; *United States v. Britt*, 170 F.R.D. 8 (D. Md. 1996).  Some regard *Mendez* as binding

circuit precedent, *see, e.g.*, *Britt*, 170 F.R.D. at 9, while others have concluded that "*Mendez* is

---

[2] To my knowledge, since *Henderson,* the Fourth Circuit has not revisited in a reported
opinion the issue of good cause in regard to service of process.

no longer good law." *Hammad*, 31 F. Supp. 2d at 527; *see also Melton*, 211 F.R.D. at 289-90.

Others have found it unnecessary to resolve definitively whether a finding of good cause is

mandatory before an extension can be granted. *See, e.g.*, *Lehner*, 2010 WL 610755, at *2; *Knott*,

2005 WL 3593743, at *1 n.1. Nevertheless, other judges of this court have held that, even if

good cause is no longer an absolute requirement under Rule 4(m), "the Court would still need to

have some reasoned basis to exercise its discretion and excuse the untimely service: the Court

must give some import to the rule." *Hoffman*, 379 F. Supp. 2d at 786; *see also Lehner*, 2010 WL

610755, at *3 (where plaintiff "made no effort to serve Defendant within the time allotted under

Fed. R. Civ. P. 4(m)," even assuming that the Court had discretion to excuse untimely filing, the

Court would "not make a mockery of the time requirements set forth in the Federal Rules of

Civil Procedure").[3]

Significantly, in the majority of the cases I have reviewed (*Lehner*, *Knott*, *Hoffman*,

*Melton*, and *Hammad*), the court has resolved the question of timely compliance with Rule 4(m)

in the context of considering a motion by a defendant, served more than 120 days after the filing

of the complaint, to dismiss for insufficient service of process under Federal Rule of Civil

Procedure 12(b)(5). In those cases, the court has had the benefit of full adversarial briefing in its

---

[3] To the extent that "good cause" applies, it requires a showing that the plaintiff "made reasonable and diligent efforts to effect service prior to the 120-day limit, which may include a showing that plaintiff's attempts at service were unsuccessful due to a putative defendant's evasion of process." *Quann v. White-Edgewater*, 112 F.R.D. 649, 659 (D. Md. 1986); *accord Knott*, 2005 WL 3593743, at *1. Where a plaintiff has failed to serve a defendant, this Court has found good cause lacking in a variety of circumstances, some quite compelling. *See, e.g.*, *Braithwaite v. Johns Hopkins Hosp.*, 160 F.R.D. 75 (D. Md. 2005) (holding that murder of *pro se* plaintiff's daughter did not constitute good cause to excuse failure to serve defendant within 120 days); *Knott*, 2005 WL 3593743, at *1-2 (holding that serious illness suffered by plaintiff's counsel, which confined him to "bed rest," did not constitute good cause for failure to serve defendant within 120 days).

consideration of the issue.

Therefore, I will grant an extension of time to plaintiff to effect service of process on Con-Way. *See, e.g.*, *Hai Xu v. FMS Fin. Solutions, LLC*, Civ. No. ELH-10-3196, 2011 WL 2144592 (D. Md. May 31, 2011); *Williams v. CompUSA*, Civ. No. ELH-10-2219, 2011 WL 2118692 (D. Md. May 27, 2011).  However, the extension is granted without a finding as to whether plaintiff has shown good cause, or any other "reasoned basis" for the extension. *Hoffman*, 379 F. Supp. 2d at 786.  Further, the extension is granted without prejudice to Con-Way's right, within twenty-one days after service of the summons and Amended Complaint, to move to vacate the extension as improvidently granted, and to seek dismissal of Omega's claims against Con-Way for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5).  In that event, I will again consider, after full briefing, the propriety of the extension.


Date:   January 13, 2012                        _____/s/_____

                                                Ellen Lipton Hollander
                                                United States District Judge